UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| EURYS HERRERO ENCARNACION, | ) | |
| Petitioner, | ) | |
| v. | ) | Civil No. 25-12237-LTS |
| ANTONE MONIZ et al., | ) | |
| Respondents. | ) | |

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS (DOC. NO. 1)

September 5, 2025

SOROKIN, J.

Eurys Herrero Encarnacion, a citizen of the Dominican Republic who is presently in immigration detention, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, seeking an order requiring the respondent to release him on bond already set by an immigration judge.  The respondents opposed the petition, and Encarnacion replied.  As the Court will briefly explain, the respondents' legal position has been squarely rejected in written decisions by numerous federal judges, including the undersigned.  The petition is ALLOWED.

Encarnacion arrived in the United States in February 2023, crossing the border between Mexico and Arizona without a visa or other valid entry document.  Doc. No. 1 ¶ 15; Doc. No. 1-6 at 3.  He promptly encountered and was arrested by Border Patrol agents.  See Doc. No. 15.  On February 25, 2023, the Department of Homeland Security ("DHS") issued three documents: a Warrant for Arrest of Alien, reflecting a determination that Encarnacion was "liable to being taken into custody as authorized by section 236 of the Immigration and Nationality Act," Doc. No. 15-1; a Notice of Custody Determination, reflecting that Encarnacion would be released on

his "own recognizance" pursuant to "section 236" of the INA, Doc. No. 15-2; and an Order of

Release on Recognizance, documenting the conditions of Encarnacion's release "in accordance

with section 236" of the INA, Doc. No. 15-3.  All three documents bear the electronic signature

of the same DHS representative, the "Acting/Patrol Agent in Charge" at the Border Patrol station

in Yuma, Arizona.  Doc. Nos. 15-1 to -3.  The Order of Release required Encarnacion to report

to a DHS unit in Newark, New Jersey, a month later to enroll and participate in "an Alternatives

to Detention program" designated by DHS.  Doc. No. 15-3.

Following his release, Encarnacion spent consecutive one-year periods living and

working in Alabama and then New Jersey.  Doc. No. 1-7 at 4.  On April 24, 2025, DHS issued a

Notice to Appear, which initiated removal proceedings against Encarnacion under 8 U.S.C.

§ 1229a (or INA section 240).  Doc. No. 15-4.  The Notice to Appear was signed by a DHS

officer in Newark and reflects service via mail to Encarnacion.  Id. at 2.  It required his

appearance before an immigration judge in Newark in February 2026.  Id. at 1.  The respondents

have submitted nothing suggesting Encarnacion's release status was revisited or altered at that

time.  In May of this year, Encarnacion moved to Maine and began working at a restaurant in

Bangor.  Doc. No. 1-7 at 4.  He has no criminal history, Doc. No. 1-6 at 3, and has a pending

application for asylum, Doc. No. 1-7.

Border Patrol agents stationed in Houlton, Maine, arrested Encarnacion and two others

during a raid of his workplace on June 26, 2025.  Doc. No. 1-6 at 2.  After determining he was

"illegally present in the U.S. without valid immigration status," the agents transported him to

their station for processing and ultimately turned him over to U.S. Immigration and Customs

Enforcement ("ICE") "pending removal procedures."  Id. at 2–3 (citation modified).  That day,

DHS issued a new warrant for Encarnacion's arrest, again "pursuant to section 236" of the INA.

Doc. No. 15-5.  The warrant was accompanied by a Notice of Custody Determination also dated

June 26, 2025, reflecting DHS's decision to detain Encarnacion "pursuant to section 236" of the

INA.  Doc. No. 15-6.  The Notice reflects Encarnacion's request for "review of this custody

determination" by an immigration judge ("IJ").  Id.

On July 16, 2025, DHS issued Additional Charges of Inadmissibility/Deportability in

Encarnacion's removal proceedings.  Doc. No. 15-7.  The original Notice to Appear alleged

inadmissibility on the basis of 8 U.S.C. § 1182(a)(6)(A)(i), because Encarnacion was "present in

the United States without being admitted or paroled," Doc. No. 15-4, and the new document

alleged inadmissibility on the basis of § 1182(a)(7)(A)(i)(I), because Encarnacion did not possess

a valid visa or other entry document, Doc. No. 15-7.  Notwithstanding the added charge, an IJ

ordered Encarnacion's release on $3,500 bond on July 17, 2025.  Doc. No. 1-3.  DHS, however,

reserved its right to appeal that determination, id., which stayed the IJ's bond order, 8 C.F.R.

§ 1003.6(a).  Because DHS then filed a timely appeal with the Board of Immigration Appeals

("BIA") on July 31, 2025, Doc. No. 1-5, the IJ's bond order remains stayed for at least ninety

additional days, 8 C.F.R. §§ 1003.6(c)(4), 1003.19(i); Doc. No. 1-5 at 2.

On August 11, 2025, Encarnacion instituted this action by filing a habeas petition,

alleging his detention violates federal immigration statutes and the Fifth Amendment's Due

Process Clause.  Doc. No. 1.  He seeks an order compelling his release on the terms set by the IJ

(i.e., on $3,500 bond).  Id. ¶ 7 & Prayer for Relief.  After reviewing the petition, the Court

directed the respondents to address in their answer why Encarnacion's petition should not be

granted for the same reasons another session of this Court recently granted relief to another

petitioner whose challenge to their detention turned on the same question of statutory

interpretation.  See Doc. No. 5 (citing Oliveira Gomes v. Hyde, No. 25-cv-11571-JEK, 2025 WL

1869299 (D. Mass. July 7, 2025) (slip copy), which this Court adopted in Garcia v. Hyde, No. 25-cv-11513, ECF No. 21 (D. Mass. July 14, 2025)).

The respondents answered the petition on August 21, 2025, urging this Court to "reject [Encarnacion's] attempt to circumvent the detention statute under which he is rightfully detained." Doc. No. 12 at 2. The respondents ground this invitation on their suggestion that Encarnacion is ineligible for discretionary release on bond because he is now—and has always been—subject to mandatory detention under 8 U.S.C. § 1225(b). Though they acknowledge "that other sessions of this court, as well as other courts across the country" have rejected their view, they imply those cases were wrongly decided, and they pointed to a decision by a different session of this Court that (in their view) supports denial of Encarnacion's petition. See id. at 10–11 & n.3 (citing Pena v. Hyde, No. 25-cv-11983-NMG, 2025 WL 2108913, *1 (D. Mass. July 28, 2025)). Encarnacion replied to the respondents' arguments, directing the Court's attention to decisions by various federal courts in Massachusetts and beyond rejecting the respondents' legal argument. Doc. No. 13.

Upon reviewing the papers, the Court noted that certain documents evidencing the underlying facts were not among the materials presented by the parties. In particular, the record did not include copies of DHS reports and other documents generated in February 2023 when Encarnacion was arrested after crossing the border into the United States, nor did it include an arrest warrant or other similar document generated when Encarnacion was turned over to ICE and placed in detention in June 2025. Because such documents bear on facts that are material to applying the detention statutes at issue in this case, the Court directed the respondents to produce them. Doc. No. 14. They have now done so. Doc. Nos. 15, 15-2 to -7.

After carefully reviewing the record that the parties have developed in this case alongside the relevant provisions of the INA, the Court is persuaded that Judge Kobick's thorough analysis of the relevant statutory language in Oliveira Gomes is, in fact, correct.  As the respondents "recognize," Doc. No. 12 at 10 n.3, and as a recent decision by Judge Murphy makes plain, numerous other federal courts in this and other jurisdictions have reached the same conclusion. See Romero v. Hyde, No. 25-cv-11631-BEM, 2025 WL 2403827, *1 (D. Mass. Aug. 19, 2025) (noting government's position "would require the mandatory detention of hundreds of thousands, if not millions, of individuals currently residing within the United States," and non-exhaustively collecting more than a dozen cases from seven different districts rejecting the position).  For the same reasons articulated in detail by Judges Kobick and Murphy, and the various other courts cited in the opening paragraphs of Romero, the Court concludes that Encarnacion is not subject to mandatory detention under § 1225(b).  During his first encounter with immigration authorities in February 2023 and continuing through earlier this year, DHS has dealt with Encarnacion through the ordinary removal process, including the discretionary detention provisions of § 1226(a).  A DHS representative inspected him in 2023 and released him on the basis of that statute, and every other DHS document before the Court cites that statute as governing his arrest and detention status.  In awarding him bond, the IJ also understood this and correctly applied the discretionary provisions of § 1226(a).  The agency's attempt to reverse course now and rely on § 1225(b) to justify Encarnacion's detention is contrary to the law and longstanding government practice, including in this case.  This alone warrants granting Encarnacion's petition.

If that were not enough, at least one other federal judge has considered the government's view of the relevant INA detention statutes in a context nearly identical to this one.  See Garcia Jimenez v. Kramer, No. 4:25-cv-3162, 2025 WL 2374223, at *2 (D. Neb. Aug. 14, 2025).

There, after noting it "tended to agree" with the petitioner's legal argument about why he was not subject to mandatory detention, the court found that the petitioner was entitled to relief irrespective of whether § 1225(b) could theoretically apply.  Id.  That was so because the petitioner's detention in fact arose from the automatic stay triggered under applicable federal regulations by DHS's pending appeal of a bond decision—as does Encarnacion's detention here. Id.  Detention on that basis, the court found, was unlawful for three separate reasons: it violated the petitioner's procedural and substantive due-process rights, and the regulation "permitting DHS to unilaterally extend the detention of an individual, in contravention of the findings of an" IJ, was ultra vires.  See id. at *3–5.  Though Encarnacion has not presented the same ultra vires challenge to the automatic stay regulation, his petition raises a Due Process challenge, as to which the Garcia Jimenez court's reasoning is persuasive.

In sum, the Court adopts and incorporates by reference the reasoning of Judge Kobick in Oliveira Gomes (as to the proper construction of the INA's detention provisions) and of the Garcia Jimenez court (as to the due-process violations arising from DHS's invocation of the automatic stay).  Accordingly, the Court hereby ALLOWS the petition and ORDERS as follows: 1) the stay of the IJ's bond determination is LIFTED; 2) the respondents shall release Encarnacion if and when he satisfies the $3,500 bond, per the IJ's order; and 3) the respondents shall not retaliate against Encarnacion for his filing of this federal habeas petition.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge